**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

DEMARA HAMPTON,
Plaintiff,

v.

RANDY CAGLE, et al.,
Defendants.

Case No. 4:20-cv-04210-SLD-JEH

**Report and Recommendation**

Now before the Court is Plaintiff Demara Hampton's motion for default judgment, which Chief Judge Sara L. Darrow referred to the undersigned for an evidentiary hearing to ascertain the amount of damages to which Plaintiff is entitled. (3/1/2024 Text Order). For the reasons set forth below, the Court recommends judgment be entered for Plaintiff in the amount of $3,396,580.50.

**I**

**A**

Plaintiff filed a Second Amended Complaint (Doc. 45)[1] against Defendants Randy Cagle and Inmate Services Corporation (ISC) on February 16, 2023.[2] Defendants ISC and Cagle were served with notice on April 11, 2023 (Doc. 56) and April 15, 2023 (Doc. 57), respectively. Both Defendants failed to file an Answer to the Complaint. Plaintiff filed a Motion for Entry of Default (Doc. 66) on February 5, 2024. Thereafter, on February 22, 2024, the Court entered Default against the Defendant (2/21/2024 Text Order) pursuant to Federal Rule of Civil Procedure 55(a). Plaintiff filed a Motion for Default Judgment (Doc. 64) on December 28, 2023. Plaintiff claims $3,000,000 in compensatory damages, $396,145 in attorney fees, $645 in mileage costs, $400 in filing fees, and $35.50 in copy

[1] Citations to the case docket are abbreviated as "Doc.__at ECF p. __."
[2] Plaintiff filed an initial complaint on October 1, 2020 (Doc. 1) and Default was entered against Defendants on December 18, 2020 (12/18/2020 Text Order).

costs. (Doc. 65 at p. 3-4; Doc. 70). This amounts to $3,397,225.50 in total for damages, attorney fees, and costs combined. The District Judge determined that Plaintiff could not provide sufficient documentary evidence from which the Court could ascertain her damages and referred the matter to the undersigned for an evidentiary hearing. (3/1/2024 Text Order). That evidentiary hearing was subsequently held on June 3, 2024, to determine Plaintiff's amount of damages.

**B**

Plaintiff's claims arise from an incident on October 2, 2018, when Plaintiff was a detainee being transported from an Indiana correctional facility to a facility in Missouri. (Transcript of Evidentiary Hearing 6:3-5). Defendant ISC, owned by Defendant Cagle, was the company under contract with the state to transport detainees. (Doc. 65 at p. 2). On the day of October 2, Plaintiff, along with around ten others, was transported in an ISC van driven by ISC employee Marius Nesby. (6:5-8). At some point during the trip, the van stopped at a rest stop, and Plaintiff exited to use the restroom. (7:4-20). Nesby then followed her into the restroom stall, threatened her, and proceeded to rape her. (8:5-15). After returning to the van, Plaintiff was able to call and report the incident to the father of her children, who then called the police, leading to the arrest of Nesby. (9:9-10:18). From this event, Plaintiff claims $3,398,270.50 in total damages, attorney fees, and costs. (Doc. 65 at p. 4).[3]

In the immediate aftermath of the rape, Plaintiff, who was one month postpartum at the time of the incident, was left with vaginal lesions causing bleeding and "extreme" pain. (7:21-22, 10:25-11:2). Plaintiff testified that, following the attack, she continued to experience bleeding for several months, and her pain lasted for "a couple years." (11:4-9).

Mentally, Plaintiff reported initially feeling shock, shame, and embarrassment. In the months and years since her rape, Plaintiff has dealt with a multitude of mental health issues. (11:14-17). She developed depression and post-traumatic stress disorder (PTSD),

[3] While Plaintiff claims $3,398,270.50 in total damages, the amounts she listed total $3,358,275.50. *See* (Doc. 65 at pgs. 3-4) ($3,000,000 in compensatory damages, $357,195 in attorney fees, $35.50 in out of pocket copy costs, $645 in mileage costs, and $400 filing fee).

as well as intermittent suicidal ideation and self-harming tendencies. (11:20-12:14). She receives counseling and is prescribed medication for these diagnoses. (11:20-21). Additionally, Plaintiff reports that, as a result of the rape, she not only now has a general fear of men, but also difficulty connecting with others, including her children (14:15-15:16).

Compounding Plaintiff's emotional distress were two later findings. (16:12-16). First was Plaintiff's discovery Nesby had previously sexually assaulted another woman in ISC's custody. (15:17-24). Plaintiff also later learned that not only did multiple ISC drivers have a history of abusing detainees, but that Defendant Cagle, the owner of ISC, was aware of the histories of the employees and the multiple incidents of sexual assault against those under ISC's care. (16:1-8). Defendants subsequently failed to address or prevent the sexual abuse of detainees by ISC drivers, even after at least fifteen prior suits had been brought against the company. (16:6-8).

**II**

**A**

When a default judgment is entered against a party, under Rule 55 of the Federal Rules of Civil Procedure, there are two methods of entering judgment. If the plaintiff's claim is for a sum that can be computed with certainty, the clerk enters judgment for that certain amount against the defaulting party. FED. R. CIV. P. (55)(b)(1). In all other cases, the plaintiff must apply to the court for a default judgment, where the court may then conduct hearings to ascertain the amount of damages. FED. R. CIV. P. (55)(b)(2).

Though a default judgment establishes the factual allegations of a complaint as true, allegations relating to the amount of damages are not and still must be proven by the plaintiff. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). Using the principle of proximate cause, in the context of a default judgment, the plaintiff must show that the compensation she claims relates to damages that "naturally flow from the injuries pleaded." *Id*. at 893 (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992)). When proving damages, the plaintiff has a more relaxed burden of proof than she does for causation. *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750,

759 (7th Cir. 2011). While damages may still be difficult to calculate definitively, the court is given "broad latitude" in determining damages after a default judgment, and any doubts when estimating damages are to be resolved against the defaulting party. *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014); *BCS Servs.*, 637 F.3d at 759.

**B**

In the case at hand, Plaintiff's physical and mental suffering clearly stems from her assault, which in turn resulted from the actions and inaction of Defendants. An employee of Defendants, who Defendants knew had previously sexually assaulted a detainee, raped Plaintiff. Prior to Plaintiff's rape, Defendants also had knowledge of the fact that multiple of their employees had sexually abused detainees in the care of ISC, and subsequently failed to take steps to prevent further assaults from occurring. As such, Plaintiff's claims for damages "naturally flow" from her pleaded injuries.

A similar case to Plaintiff's is *J.K.J. v. Polk County*, in which two female inmates were repeatedly sexually assaulted by a correctional officer over three years. 960 F.3d 367, 371 (7th Cir. 2020). The facility that housed the plaintiffs was found to have had knowledge of sexual misconduct happening within the jail, as well as policy failures in both the prevention and detection of sexual abuse of its inmates. *Id*. at 381-82. The plaintiffs were each awarded $2,000,000 in compensatory damages, with an additional $3,750,000 in punitive damages specifically from the correctional officer. *Id*. at 375. Awards in other comparable cases have been even more generous. In *Doe v. Macleod*, for example, an inmate plaintiff who was raped multiple times by a correctional counselor was awarded over $19,000,000 in total damages – $8,000,000 of which were compensatory – following a jury trial. No. 18-3191, 2023 WL 2698672 (C.D. Ill. Mar. 29, 2023).

In the case at hand, Plaintiff was similarly at the mercy of her attacker, as she was a detainee assaulted by someone acting under color of law. While, unlike those plaintiffs in *Polk County*, Plaintiff was assaulted once, rather than multiple times, her case still presents serious aggravating factors. *See id*. For one, Plaintiff had given birth just one month before she was assaulted, which would significantly increase her pain and both physical and mental suffering. Plaintiff's physical pain and suffering also extended well

beyond merely the incident and its immediate aftermath. She experienced bleeding for months following the assault, and her pain persisted for several years.

Moreover, now five years after being assaulted, Plaintiff still experiences severe mental health challenges. The trauma of her attack left Plaintiff with depression and PTSD. At points, she has considered suicide and self-harm. She now struggles to connect with others, including her own children. While she is now in therapy and taking medication, her issues may well be lifelong. Undoubtedly, Defendants' conduct severely negatively affected the most important aspects of Plaintiff's life.

Considering the serious nature of Plaintiff's case and the grave consequences – both immediate and long-term – of her injuries proximately caused by Defendants, $3,000,000 in compensatory damages is a decidedly reasonable amount.

**III**

**A**

A violation of 42 U.S.C. § 1983 while acting under color of law makes a defendant liable for attorney's fees pursuant to 42 U.S.C. § 1988. In statutory fee-shifting cases, the Seventh Circuit employs the lodestar method to determine a reasonable compensation for the plaintiff's attorney. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 2023). Using the lodestar approach, the court first establishes the reasonable hours worked by the attorney. *Id.* at 974. The court then determines the reasonable hourly rate for an attorney of "similar experience, competence, and specialty." *Id*. The reasonable hours are then multiplied by the reasonable hourly rate to produce the "lodestar." *Id*. After the lodestar has been established, risk multipliers may then be assessed to increase compensation. *Id*. A multiplier, based on time expended, has been found appropriate in cases with a low probability of recovery at their outset. *Skelton v. General Motors Corp.*, 860 F.2d 250, 257 (7th Cir. 1988). According to the court in *Harman*, a proper multiplier should not increase the award for attorney's fees to more than 20% of the total damages awarded. 945 F.2d at 778.

As for additional costs incurred by a plaintiff, Federal Rule of Civil Procedure Rule 54(d)(1) allows a prevailing party to recover litigation costs other than attorney's fees. 28

U.S.C. § 1920 lays out those costs which may be taxed to the defendant, and the court must determine: "(1) whether the expenses are allowable under § 1920, and (2) whether the expenses are reasonable and necessary." *U.S. Fid. & Guar. Co. v. Shorenstein Realty Servs., L.P.*, 803 F. Supp. 2d 920, 922 (N.D. Ill. 2011) (citing *Deimer v. Cincinnati Sub-Zero Prods., Inc*., 58 F.3d 341, 345 (7th Cir. 1995)).

**B**

As Defendants violated § 1983 while acting under color of law, Plaintiff is now entitled to recover attorney's fees from Defendants. Plaintiff's attorneys, Brian Wendler and Lyle Gregory, submitted affidavits as to their usual fees. Multiplying Mr. Wendler's customary fee of $380 per hour by his reasonable hours of 83.1 produces his "lodestar" of $31,578. Mr. Gregory's hourly rate of $400 and his 317.2 hours expended result in his "lodestar" of $126,880.

At the outset of the case, the probability of recovery was quite low, and taking on the case involved some risk on the part of Plaintiff's attorneys. Therefore, the use of a risk multiplier is appropriate. Using Plaintiff's requested multiplier of 2.5, total fees equal $78,945 for Mr. Wendler and $317,200.00 for Mr. Gregory. The total of $396,145 for attorney's fees is approximately 11% of Plaintiff's total award, making the multiplier of 2.5 proper in this case.

**C**

Plaintiff seeks $1,080.50 in costs, including $400 for the filing fee, $35.50 in copy costs, and $645 in mileage costs. Under 28 U.S.C. § 1920, costs for copies may be awarded. The Seventh Circuit has also determined amounts spent on filing fees as included in § 1920. *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008). However, attorney travel expenses are not considered recoverable, as they are not listed under § 1920. *Comm'rs of Highways of Towns of Annawan v. U.S.*, 653 F.2d 292, 298 (7th Cir. 1981); *see also Amerisure Ins. Co. v. Roll Serv. Inc.*, No. 01 C 5292, 2003 WL 21518549, at *2 (N.D. Ill. July 2, 2003). Travel time by an attorney is recoverable under the umbrella of attorney's fees, and, as Mr. Wendler's and Mr. Gregory's records show both billed for travel time, Plaintiff's claims for mileage costs are disallowed. *See Nichols v. Illinois Dep't of Transp.*, 4 F.th 437,

443 (7th Cir. 2021); Doc. 65, Exhibit A. Accordingly, Plaintiff is awarded $435.50 in costs for copy costs and her filing fee.

**IV**

For the foregoing reasons, the Court recommends judgment be entered for Plaintiff in the total amount of $3,396,580.50, including $3,000,000 in compensatory damages, $396,145 in attorneys' fees, $400 in filing fees, and $35.50 in copy costs.

The Plaintiff is advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

Entered on June 27, 2024.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE