UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEMARA HAMPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 4:20-cv-04210-SLD-JEH |
| | ) |
| RANDY CAGLE AND INMATE SERVICES CORPORATION, | ) |
| | ) |
| Defendants. | ) |

ORDER

Plaintiff Demara Hampton asserts that she was battered, sexually assaulted, and raped by Marius Nesby, who was employed as a driver by Defendant Inmate Services Corporation ("ISC"). Second-Am. Compl. ("Operative Complaint") ¶ 21, ECF No. 45.[1] Defendant Randy Cagle was the President and owner of ISC. *Id.* ¶ 3. Pending before the Court are Hampton's Second-Amended Motion for Judgment by Default as Against Defendants Randy Cagle and ISC, ECF No. 64, and Magistrate Judge Jonathan E. Hawley's Report and Recommendation ("R&R"), ECF No. 71. For the reasons that follow, Judge Hawley's R&R is ADOPTED, and Hampton's motion for default judgment is GRANTED.

---

[1] Hampton entitled this complaint in part "Second-Amended Complaint," but this complaint is the fourth complaint that she has filed in this action. *See* Pet. Damages, ECF No. 1; First Am. Pet. Damages, ECF No. 4; First-Am. Compl., ECF No. 40. For the sake of clarity, the Court refers to this complaint as the Operative Complaint.

1

# BACKGROUND[2]

## I. Factual Allegations

Cagle and ISC were in the business of picking up detainees who were wanted on warrants in various states and transporting them to the states where those warrants were pending. ISC had been hired by Pulaski County, Missouri officials to handle out-of-state detainee transfers, despite a history of accusations that ISC's male drivers were sexually abusing female detainees. In May 2018, a newspaper article in Missouri's *Springfield New Leader* reported that: (1) ISC and its drivers had been sued in federal court at least fifteen times for unsafe conditions and inmate abuse; (2) a Missouri man had killed himself while in ISC's custody; and (3) a South Dakota sheriff stated that "[he] would never use that bunch." Operative Complaint ¶¶ 32–36. Cagle was named as a defendant in at least some of these lawsuits.

Hampton failed to appear for a court date related to a pending charge against her in Pulaski County. A judge issued a warrant for Hampton's arrest, and she was found outside of Missouri and detained. On or about October 2, 2018, Nesby was transporting Hampton to Pulaski County. Nesby stopped the transport van at a roadside rest stop in Henry County, Illinois. Hampton exited the van to use the bathroom and Nesby followed her into the bathroom, wherein he battered, sexually assaulted, and raped her. Nesby had been accused of sexually assaulting a different female detainee, Sheenah Arenz, while transporting her for ISC mere months before Hampton was raped by him in October 2018.

Hampton alleges that Cagle and ISC's failures were the proximate cause of Nesby's unsupervised access to her. She was able to call the father of her children and report the

---

[2] Because "[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true," *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (alteration in original) (quotation marks omitted), the following facts are drawn from the Operative Complaint unless otherwise noted.

incident—she was only one month postpartum at the time.  R&R 2.  He called the police and Nesby was subsequently arrested.  *Id.*  Nesby pleaded guilty to a crime because of these events.  Hampton asserts that because of this incident, she experienced extreme emotional distress, sustained physical injuries, and incurred costs for medical care, amongst other harms.

## II.    Procedural History

Hampton filed a complaint against Cagle and ISC on October 1, 2020.  *See generally* Pet. Damages, ECF No. 1.  Neither Cagle nor ISC filed an answer, so the Court directed that default be entered against them.  Dec. 18, 2020 Text Order (Hawley, M.J.).  On April 23, 2021, Cagle filed a *pro se* answer flatly denying the allegations himself and ISC and requested that the Court dismiss this action.  *See generally* Defs.' Answer & Mot. Dismiss, ECF No. 14.  The Court struck this answer as untimely and inadequate as it failed to argue that the default entered against him and ISC should be set aside, and because he was proceeding *pro se* and was not allowed to represent a corporation like ISC.  Apr. 26, 2021 Text Order (Hawley, M.J.).  This answer was Cagle and ISC's only participation in this action.  Hampton was unrepresented by counsel for some time and her *pro se* motion for default judgment was stricken for lack of compliance with the Local Rules.  *E.g.*, Dec. 21, 2021 Text Order.

Eventually, attorneys Lyle M. Gregory and Brian M. Wendler filed their appearances on Hampton's behalf.  Entry Appearance, ECF No. 25; Entry Appearance Co-Counsel, ECF No. 29.  Hampton subsequently filed an amended complaint which newly asserted claims against Pulaski County, the Pulaski County Commission, individual Pulaski County commissioners, and Pulaski County's sheriff (collectively "Pulaski County Defendants").  First-Am. Compl. ¶¶ 4–7, 47–65, ECF No. 40.  Hampton filed the Operative Complaint shortly thereafter.  The Court granted Pulaski County Defendants' motion to dismiss the claims asserted against them and ordered that

the Pulaski County Defendants be terminated as Defendants on the docket.  Sept. 6, 2023 Order, ECF No. 58.  The only two claims remaining in Hampton's Operative Complaint are Count I, which asserts that Cagle and ISC were negligent with respect to preventing Nesby's conduct, Operative Complaint ¶¶ 14–22; and Count II, which invokes 42 U.S.C. § 1983 to assert that Cagle and ISC acted under color of law when they caused the violation of Hampton's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments, *id.* ¶¶ 23–47.

Subsequently, Hampton filed the pending motion for default judgment.  The Court directed Hampton to renew the entry of default against Cagle and ISC as the Operative Complaint was filed after default was first entered against them.  Jan. 24, 2024 Text Order (citing *GC Am. Inc. v. Hood*, No. 20-cv-03045, 2023 WL 6290281, at *7 (N.D. Ill. Sept. 27, 2023)).  Default was again entered against Cagle and ISC.  Feb. 21, 2024 Text Order (Hawley, M.J.); Feb. 22, 2024 Entry Default.  The Court found that Hampton's claimed damages were not capable of ascertainment from definite figures and granted her request for an evidentiary hearing on her damages, referring the hearing to Judge Hawley.  Mar. 1, 2024 Text Order.  That hearing was held on June 3, 2024, June 3, 2024 Min. Entry (Hawley, M.J.), and Judge Hawley issued his R&R on June 27, 2024, R&R 1.  Judge Hawley recommended that judgment be entered for Hampton in the total amount of $3,396,580.50, including $3,000,000 in compensatory damages, $396,145 in attorneys' fees, $400 in filing fees, and $35.50 in copy costs.  *Id.* at 7.  No party objected to any portion of the R&R.

## DISCUSSION

### I. Legal Standards

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th

Cir. 1983). Yet the entry of default judgment is not automatic, as "[p]laintiffs seeking default judgment must demonstrate that they are entitled to judgment as a matter of law." *Ford Motor Credit Co. LLC v. Fincannon Ford, Inc.*, No. 1:19-CV-502-HAB, 2020 WL 6336209, at *1 (N.D. Ind. Oct. 29, 2020) (citing *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995)). "[A]llegations in the complaint with respect to the amount of the damages are not deemed true. The district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quotation marks omitted). Plaintiffs seeking a default judgment have a relaxed burden of proof and broad latitude in quantifying damages. *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014). "Within the context of a default judgment, proximate cause . . . requires only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Wehrs v. Wells*, 688 F.3d 886, 893 (7th Cir. 2012) (quotation marks omitted).

When a magistrate judge considers a pretrial matter dispositive of a party's claim or defense, he must enter a recommended disposition. Fed. R. Civ. P. 72(b)(1). Parties may object within fourteen days of being served with a copy of the recommended disposition. *Id.* 72(b)(2). The district judge considers *de novo* the portions of the recommended disposition that were properly objected to, and may accept, reject, or modify the recommended disposition, or return it to the magistrate judge for further proceedings. *Id.* 72(b)(3). If no objection, or only partial objection, is made, the district judge reviews the unobjected portions of the recommendation for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

II. Analysis

The Court has federal-question jurisdiction over Hampton's section 1983 claim pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over Hampton's state-law claim of

negligence pursuant to 28 U.S.C. § 1367(a) because that claim arises from a common nucleus of operative fact with her section 1983 claim. *See, e.g.*, *Preston v. Wiegand*, 573 F. Supp. 3d 1299, 1307 (N.D. Ill. 2021) (citing *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 606–07 (7th Cir. 2008)).

### A. Entitlement to Judgment

#### 1. Negligence

Hampton alleges that Cagle and ISC did not take reasonable steps to: (1) investigate Nesby's background or history; (2) train Nesby on detainees' rights and the protection thereof; (3) ensure that other ISC drivers who might accompany Nesby observe and report his behavior; (4) install or monitor cameras in ISC vans to observe Nesby's interactions with detainees; (5) require at least one female ISC employee on routes where ISC knew it would be transporting female detainees; and (6) require that a female driver accompany female detainees to the restroom when bathroom breaks were required. Operative Compl. ¶ 20. She further asserts that they retained and failed to terminate Nesby when they had either actual or constructive knowledge that he had sexually assaulted Arenz—and possibly others—and that he had a propensity to take advantage of the defenseless detainees entrusted to him. *Id.* She argues these failures constituted negligence. *Id.* ¶¶ 14–22.

The Court applies the law of Illinois to Hampton's claims of negligence against Cagle and ISC. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law."); Mem. Supp. Mot. Default J. 1–4, ECF No. 65 (failing to specify which state's substantive law should apply to her negligence claim).[3] Under Illinois law, claims for negligent

---

[3] In response to Pulaski County Defendants' motion to dismiss, Hampton argued that Missouri law would apply for considering whether her section 1983 claim was timely. Mem. Opp. Mot. Dismiss 12–17, ECF No. 54. The Court

6

hiring and negligent retention both require that a plaintiff show that: (1) an employee had "a particular unfitness for the position" which created "a danger of harm to third persons"; (2) that "particular unfitness was known or should have been known" at the time of the hiring or retention; and (3) that "particular unfitness proximately caused the plaintiff's injury." *Doe v. Coe*, 135 N.E.3d 1, 17 (Ill. 2019) (quotation marks omitted).

Those elements are satisfied by Hampton's factual allegations, which are taken as true by virtue of Cagle and ISC's default. *See Dundee Cement*, 722 F.2d at 1323. Nesby's propensity to take advantage of "helpless and defenseless female prisoners," made him unfit to be trusted with those prisoners' transportation and an obvious danger to their safety. Operative Compl. ¶ 20. ISC and Cagle had at least constructive knowledge that Nesby had sexually assaulted another female detainee, Arenz, in the months prior to his transporting of Hampton. *Id.* Nesby's predilections caused Hampton's injuries, and his reprehensible behavior was enabled by Cagle and ISC providing him with access to defenseless targets. *Id.* ¶¶ 20–22. The court handling Arenz's claims against Nesby and ISC concluded in a similar default-judgment posture that "[t]he facts pleaded in the complaint establish Defendants' liability for assault and battery, threat

---

noted that she had "made a compelling argument that Missouri *substantive* law might apply to a personal injury case under these facts." Sept. 6, 2023 Order 9. But the Court did not definitively decide that Missouri's substantive law applied to any state-law claims arising out of this incident, and, again, Hampton does not identify which body of law should apply to her negligence claim in her default judgment briefing. In any case, under Illinois's choice-of-law rules, a choice-of-law analysis is necessary "only when a difference in the states' law will make a difference in the outcome." *Hill-Jackson v. FAF, Inc.*, 808 F. Supp. 2d 1083, 1088–89 (S.D. Ind. 2011) (citing *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 905 (Ill. 2007)). Here, the Court discerns no outcome-determinative distinction between Missouri and Illinois law with respect to Hampton's negligence claims. For example, under Illinois law, claims for negligent hiring and negligent retention both require that a plaintiff show that: (1) an employee had "a particular unfitness for the position" which created "a danger of harm to third persons"; (2) that "particular unfitness was known or should have been known" at the time of the hiring or retention; and (3) that "particular unfitness proximately caused the plaintiff's injury." *Doe v. Coe*, 135 N.E.3d 1, 17 (Ill. 2019) (quotation marks omitted). Missouri law similarly requires for claims of negligent hiring or negligent retention that a plaintiff show: "(1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries." *Doe 122 v. Marianist Province of the U.S.*, 620 S.W.3d 73, 77 (Mo. 2021) (en banc). Therefore, the Court applies Illinois law for purposes of determining whether Hampton's allegations—established as true by virtue of Cagle and ISC's default—entitle her to a default judgment on her claims that Cagle and ISC were negligent.

of false imprisonment, and failure to supervise, control, or train under Wisconsin state law." *Arenz v. Inmate Servs. Corp.*, No. 19-CV-949-JPS, 2022 WL 93509, at *1 (E.D. Wis. Jan. 10, 2022); *see also Miller v. Wal-Mart Stores, Inc.*, 580 N.W.2d 233, 241 (Wis. 1998) (adopting tort of negligent hiring, training, or supervision in Wisconsin). Cagle and ISC are liable to Hampton for their negligence.

### 2. Section 1983

Hampton alleges that Cagle and ISC are liable under section 1983 for a series of constitutional torts, namely violations of the Fourth, Fifth, and Fourteenth Amendments via Nesby's unreasonable seizure, her being punished without due process, and the deprivation of her liberty interest in bodily integrity without due process respectively. Operative Compl. ¶¶ 23–47. Section 1983 allows plaintiffs to sue those persons who, acting under color of state law, violated their constitutional rights. 42 U.S.C. § 1983. Vicarious or *respondeat superior* liability is unavailable under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) ("[P]rivate corporations acting under color of law also benefit from *Monell's* rejection of respondeat superior liability for an employee's constitutional violations.").

To hold ISC liable for Nesby's actions, Hampton must show that: (1) ISC acted under color of state law; (2) Nesby's actions were a violation of her constitutional rights; and (3) "a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it)," as opposed to merely showing that "the harm resulted from the acts of the entity's agents." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). Starting with the first showing, "[m]ost defendants under § 1983 are public employees, but private companies and their employees can also act under color of state law and thus can be sued under § 1983." *Shields v. Ill. Dep't of*

*Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).  Municipalities may delegate policymaking authority for traditional public functions to a private entity, which may make the actions that entity takes fall within the scope of state action.  *See West v. Atkins*, 487 U.S. 42, 55–56 (1988); *cf. Pindak v. Dart*, 125 F. Supp. 3d 720, 746 (N.D. Ill. 2015) ("A private action may be fairly attributable to the state when private employees 'perform[ ] functions that would otherwise be performed by public employees.'" (alteration in original) (quoting *Belbachir v. County of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013)).  For example, a court found that ISC acted under color of state law when it transported a prisoner because "custody of the state prisoners is traditionally an exclusive state function" and "ISC had authority to transport [the prisoner] only because the state delegated that function to ISC."  *Dykes v. Inmate Servs. Corp.*, No. 9:14-3609-RMG, 2017 WL 496065, at *3 (D.S.C. Feb. 7, 2017).  Here, Hampton established that ISC was performing a traditionally exclusive state function because it was in the business of transporting detainees across state lines and did so in Hampton's case via a delegation of state authority from Pulaski County.  Operative Compl. ¶¶ 15, 24.  Therefore, ISC was acting under color of state law when it entrusted Hampton's transport to Nesby.

The second showing, a constitutional violation, is easily satisfied—rape is clearly an invasion of one's right to bodily integrity and a violation of the affirmative duties imposed by the Constitution upon the state and its agents when they hold an individual in involuntary custody.  *See, e.g.*, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds [her] there against [her] will, the Constitution imposes upon it a corresponding duty to assume some responsibility for [her] safety and general well-being."); *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003) ("[A] rape

9

committed under color of state law is . . . actionable under 42 U.S.C. § 1983 as a deprivation of liberty without due process of law.").

As to the third showing, that the violation was caused by an official policy or custom, Hampton has argued that the Operative Complaint satisfies this requirement under a variety of theories, *see* Mem. Opp. Mot. Dismiss 3–12, ECF No. 54, but the Court need not consider each theory to determine whether she has demonstrated her entitlement to a default judgment. An official policy or custom of inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [state officials] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989); *see also Glisson*, 849 F.3d at 381 ("[I]n situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable." (quotation marks omitted)). The Supreme Court noted "that [if] in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, . . . the policymakers of the [state actor] can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *see also Connick v. Thompson*, 563 U.S. 51, 63–64 (2011) (discussing this "rare" basis for liability); *cf. Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) (finding that a showing of prior instances where the relevant policies caused suicides was unnecessary because the defendant did "not get a 'one free suicide' pass").

The Seventh Circuit recently analyzed the issue of *Monell* liability in the context of jailers sexually abusing female detainees. *See generally J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020). A correctional officer employed by the county raped at least two female detainees entrusted to his custody, and the Seventh Circuit found that sufficient evidence supported the

10

jury's implicit finding that the county's "sexual abuse prevention program was entirely lacking." *Id.* at 371–72, 378–79. Although there was no "proof of a prior pattern of similar constitutional violations," namely other instances of correctional officers raping inmates, to demonstrate that the county had notice that its inadequate training created a "'known or obvious' risk that constitutional violations [would] occur," *id.* at 379–80 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)), the Seventh Circuit noted the obvious power imbalance "between a male guard and a female inmate," *id.* at 382. The jury had heard that the policymaking supervisor "knew of sexual comments male guards made about female inmates" and had learned of another guard's escalating "predatory" pursuit of a female inmate, which made it "highly predictable, if not certain, that a male guard would sexually assault a female inmate if the [c]ounty did not act." *Id.* (quotation marks omitted). The county "had a legal obligation to act—to take reasonable steps to reduce the obvious and known risks of assaults on inmates"—such as changing their policies designed to prevent the sexual abuse of inmates—yet failed to do so. *Id.* at 384 (first citing *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994); and then citing *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011)). Analogizing the case to *City of Canton*, the Seventh Circuit concluded that sufficient evidence supported the jury's conclusion that the county "deliberately chose a path of inaction when that option was off the table." *Id.* As to causation, the Seventh Circuit noted that the jury had "multiple roads" to take the "small inferential step" to infer causation from the obvious risk of constitutional injury. *Id.* at 384–85.

Hampton's factual allegations tell a story which closely aligns with *Polk County*. She describes an obvious power imbalance between herself and Nesby which was materially identical to an inmate and correctional officer. *E.g.*, Operative Compl. ¶ 20. ISC exercised delegated policymaking authority over conditions of transport and detention. *Id.* ¶ 40. ISC knew of the

11

past allegations and inmate abuse, including Nesby's sexual assault of Arenz mere months prior to October 2018. *Id.* ¶¶ 30–36. In the face of the obvious risk to detainees' rights to bodily integrity posed by failing to change the policies that enabled Nesby to harm detainees, ISC instead chose to remain inactive. *Id.* ¶ 37. It is not hard to infer that these deficient policies caused Hampton to be raped, whether one chooses to fault ISC's decision to not terminate Nesby after he sexually assaulted Arenz, its decision to not monitor his behavior, or its decision to not at least pair him with a female employee to curb his opportunity to overpower and take advantage of detainees. *Id.* ¶ 20. ISC's official policy or custom of inadequate training, supervision, and retention of dangerous employees caused Hampton's injuries, and such policy or custom was enacted under color of state law because ISC was exercising authority delegated to it by Pulaski County. Therefore, Hampton has shown that she is entitled to a default judgment under section 1983 against ISC.

Hampton's allegations against Cagle require a different analysis but warrant the same result. She sued Cagle in both his official and individual capacity, Operative Compl. ¶ 3, but the official capacity claim is duplicative of her claim against ISC, *see, e.g.*, *Moreno-Avalos v. City of Hammond*, NO. 2:16-cv-172, 2017 WL 57850, at *2 (N.D. Ind. Jan. 4, 2017) ("Official capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985))); *id.* (collecting cases where the court dismissed an official-capacity claim against an entity's officer as redundant of the claim against the entity itself). "[A] government official is only liable for his or her own misconduct." *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (quotation marks omitted). Hampton cannot rely on *Monell* to hold Cagle liable in his personal capacity. *See Wilson v. Civil Town of Clayton*, 839 F.2d 375, 382 (7th Cir. 1988) ("Because personal-capacity

suits are really suits against the official as an individual, not against the government entity, *Monell* is always inapplicable."). Hampton may hold Cagle individually liable by showing that he acted with deliberate indifference to the risk of constitutional harms caused by Nesby's misconduct. *See Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.").

Hampton alleges that Cagle was aware of ISC's shoddy performance record—including previous instances of sexual abuse of female detainees, specifically by Nesby—and was deliberately indifferent to the risks created by ISC's policy or custom of entrusting vulnerable detainees to dangerous employees. *Id.* ¶¶ 30–36. As Cagle had been named as a defendant in lawsuits pertaining to these incidents and should have known that his employee had sexually assaulted another detainee, his failure to investigate these incidents or take any corrective measures regarding the grave risks posed by Nesby amounts to deliberate indifference to the risk of Nesby's constitutional violations. *See Jones*, 856 F.2d at 992–93. As this deliberate indifference constitutes sufficient personal involvement, *see id.* at 992, Hampton has shown that she is entitled to a default judgment under section 1983 against Cagle as well.

## B. R&R on Damages

No parties objected to Judge Hawley's R&R, and the Court discerns no clear error in its findings or reasoning. *See Johnson*, 170 F.3d at 739. Judge Hawley identified and applied the correct legal standards for each form of requested relief. He concluded that Hampton was entitled to $3,000,000 in compensatory damages, $435.50 in costs, and that Gregory and Wendler were respectively entitled to $317,200 and $78,945 in attorneys' fees—a total award of

$3,396,580.50.  R&R 5–7.  Because Judge Hawley did not clearly err in this recommendation, the Court ADOPTS the R&R in its entirety.

## CONCLUSION

Accordingly, Magistrate Judge Jonathan E. Hawley's Report and Recommendation, ECF No. 71, is ADOPTED, and Plaintiff Demara Hampton's Second-Amended Motion for Judgment by Default as Against Defendants Randy Cagle and ISC, ECF No. 64, is GRANTED.  Hampton is awarded $3,000,000 in compensatory damages, $396,145 in attorneys' fees, $400 in filing fees, and $35.50 in copy costs, for a total award of $3,396,580.50.  The Clerk is directed to enter judgment and close the case.

Entered this 28th day of August, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
